IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 16-cv-02462-RBJ

IN RE ESTATE OF CHARLOTTE F. SIMMONS, a Colorado estate,

    Plaintiff,

v.

N.G.L. HOLDINGS, LLC, an Arizona limited liability company,

    Defendant.

---

ORDER DENYING N.G.L. HOLDINGS, LLC'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on defendant's motion for summary judgment, ECF No. 21. For the reasons below, the Court DENIES the motion.

## I. BACKGROUND

**A. <u>Factual Background</u>**.

This case arises from a property dispute in Huerfano County, Colorado. ECF No. 1 at 1. Ms. Charlotte Simmons, through her estate, claims that she is the rightful owner of the mineral estate located beneath the surface estate owned by N.G.L. Holdings, LLC ("NGL"). *Id.* NGL contests this, claiming that it is the owner of both the surface estate *and* the mineral estate. ECF No. 15.

    The land at issue (henceforth, "the Property") is legally described as:

> "The North ½ of the Northeast ¼, and the Southeast ¼ of the Northeast ¼ of Section 9; and the Northwest ¼ of the Northwest ¼ of Section 10; all in Township 30 South, Range 69 West of the 6th Principal Meridian in Colorado containing one hundred and sixty acres."

ECF No. 21-1. The Property's chain of title is recorded as follows:

- On November 10, 1895 the United States government granted the Property to Robert J. Price. *Id.*

- In 1928 the Price family conveyed the Property to Dorothy A. Dawson. ECF No. 21-2.

- On November 24, 1965 the Dawson family conveyed the surface estate to Alva and William Adams (collectively the "Adamses"), but reserved the mineral estate to itself. ECF No. 21-3 at 1, 2.

- Then, on February 8, 1974, the Dawson family conveyed the mineral estate to the Adamses. ECF No. 21-4. At this point, both the surface and mineral estates of the Property were held in common ownership by the Adamses.

- On May 1, 1974, a co-partnership of the Adamses called the Quivira Land Company, *see* ECF No. 21-5, conveyed the surface estate to Charlotte and Alam Simmons (collectively the "Simmonses"). That same day, the Adamses, in their individual capacities, conveyed the mineral estate to the Simmonses. ECF No. 21-7. As such, as of May 1, 1974, the mineral and surface estates of the Property were held in common ownership by the Simmonses.

- Alan Simmons died on August 11, 1982, at which time the Property passed to Charlotte Simmons exclusively. ECF No. 1 at ¶ 17(A).

- On September 27, 1995 Charlotte Simmons conveyed at least some portion of the Property to the Leonard F. Austin Jr. Revocable Trust Date April 15, 1987 (the "Austin Jr. Trust"). ECF No. 21-8. The conveyance did not specifically reference the surface or mineral estates, but stated that the following were not included in the conveyance: "1995 taxes and all subsequent years, restrictions, reservations, covenants, easements and rights-of-way of record, if any." *Id.*

- On June 29, 2007 the Austin Jr. Trust conveyed to NGL via warranty deed "the real property, together with improvements, if any, and any right, title, or interest to mineral rights and water rights, if any." ECF No. 21-9 at 1. That same day, a quitclaim deed was made and delivered to NGL including the same legal description. ECF No. 21-9 at 2.

**B. Procedural History.**

Ms. Simmons filed a complaint with this Court on September 29, 2016 seeking to quiet title to the Property's mineral estate. ECF No. 1. After submitting an answer and counterclaim

against Ms. Simmons for breach of warranty of title, ECF No. 15, NGL then filed this motion for summary judgment on June 21, 2017. ECF No. 21.

Federal jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332.[1] Therefore, Colorado substantive law applies. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). Because the Colorado Supreme Court has not directly addressed the legal issue presented, this Court must "attempt to predict how [Colorado's] highest court would interpret [the issue]." *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 875 (10th Cir. 2013). In doing so, this Court may "consider all resources available, including decisions of [Colorado] courts, other state courts and federal courts, in addition to the general weight and trend of authority." *In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir. 2010) (internal quotation marks omitted).

## II. STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will

---

[1] Ms. Simmons is a citizen of Colorado, and NGL is a citizen of Arizona.

examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### III. ANALYSIS

NGL makes two distinct arguments in support of its motion for summary judgment. First, NGL argues that the mineral and surface estates of the Property merged automatically as a matter of law when they came together in common ownership under Ms. Simmons, and that subsequent conveyances of the Property failed to re-sever the mineral estate and reserve it to Ms. Simmons. Alternatively NGL argues that even if the estates did not automatically merge by operation of law, NGL is a bona fide purchaser of the Property and had no notice of Ms. Simmons' alleged intent to not merge the two estates. Therefore, NGL argues that it is the rightful owner of the mineral estate. For the reasons described below, I deny NGL's motion for summary judgment.

   A. **Automatic Merger of Surface and Mineral Estates.**

NGL first asserts that the Property's surface and mineral estates merged as a matter of law when they were held in common ownership by Ms. Simmons. Therefore, in NGL's view, because the deeds of sale from Ms. Simmons to the Austin Jr. Trust and from the Austin Jr. Trust to NGL did not expressly re-sever the mineral estate from the surface estate, the deeds conveyed both the surface and mineral estates. As such, NGL purports to be the rightful owner of both the mineral and surface estates of the Property. Ms. Simmons argues that Colorado law does not support the proposition that mineral and surface estates automatically merge under common ownership as a matter of law.

4

NGL's motion for summary judgment presents a legal question undecided in Colorado law—namely, *do mineral and surface estates automatically merge as a matter of law when they are united in common ownership*? This question invokes two established property concepts: land severance and land merger. First, Colorado law holds that mineral and surface estates can be severed and separately owned. *See Grynberg v. City of Northglenn*, 739 P.2d 230, 234 (Colo. 1987). Second, under Colorado law "a merger always takes place when a greater estate and less coincide and meet in one and the same person, in one and the same right, without any intermediate estate, unless a contrary intent appears." *Goldblatt v. Cannon*, 95 Colo. 419, 423 (Colo. 1934). But, as noted, it is currently unsettled whether merger takes place when severed surface and mineral estates "coincide and meet in one and the same person." *Id.*

Colorado is not alone; the vast majority of states have not addressed this legal issue. *See, e.g.*, *Laettner, et. al. v. Kishiyama*, 4:15-CV-3132, 2017 WL 1180483 at *3 (Neb. 2017) (recognizing that "[m]erger, as applied in the context of mineral estates is actually a complicated and uncertain area of law: there is a split of authority on whether, and under what circumstances, a surface estate and mineral estate can merge."). Of the states that have addressed the issue, the majority have found that surface and mineral estates automatically merge under common ownership. *See DWG Oil & Gas Acquisitions, LLC v. S. Country Farms, Inc.*, 796 S.E.2d 201, 203 (W.Va. 2017) (finding automatic merger when one person owns both the surface estate and the mineral interest in a parcel of land); *Hunter v. Rosebud Cnty.*, 783 P.2d 927, 929 (Mont. 1989) (same); *Bowles v. Hopkins Cnty. Coal, LLC*, 347 S.W.3d 59, 61 (Kent. App. 2011) (same). However, at least one state appellate court determined that the merger of severed mineral and surface estates depends upon the intent of the common owner during the time in which she held

both estates. *See Steger v. Muenster Drilling Co., Inc.*, 134 S.W.3d 359, 376 (Tex. App. 2003) (using a six-part test to determine if merger occurred, including "(5) merger must not be contrary to the intention of the owner of the two estates").

Because I must predict how the Colorado Supreme Court would decide this issue, I am "free to consider all resources available, including decisions of Colorado courts, other state courts and federal courts, in addition to the general weight and trend of authority." *Id.* As such, I will first assess existing and analogous Colorado property law, and then I will assess other states' decisions in this area.

   1. **<u>Analogous Colorado Court Decisions</u>.**

Under Colorado property law, it is well established that "a merger always takes place when a greater estate and less coincide and meet in one and the same person, in one and the same right, without any intermediate estate, unless a contrary intent appears." *Goldblatt*, 95 Colo. at 423. Ms. Simmons argues that this rule does not apply to surface and mineral estates because they are equal estates rather than estates of greater or lesser and/or dominant or servient value. ECF No. 26 at 3. To bolster this argument, she cites to a footnote in *Gerrity Oil and Gas Corp. v. Magness*, in which the Colorado Supreme Court noted "our cases have consistently emphasized that both [surface and mineral] estates must exercise their rights in a manner consistent with the other . . . [h]ence, in a practical sense, both estates are mutually dominant and mutually servient because each is burdened with the rights of the other." 946 P.2d 913, 927, n.8 (Colo. 1997).

However, Ms. Simmons' interpretation of this footnote as a rejection of the dominant-servient categorization of mineral and surface estates under Colorado law is incorrect. The

6

concept of dominant-servient estates in the mineral and surface estate realm is very much alive and well in Colorado. *See Stone & Wolf, L.L.C. v. Three Forks Ranch*, No. CIV.A.00-RB-01130OES, 2004 WL 5615898, at *4 (D. Colo. Jan. 8, 2004) (citing 43 C.F.R. § 31.01–2 and *Frankfort Oil Co. v. Abrams*, 413 P.2d 190, 195–45 (Colo. 1996)) ("A surface estate is subservient to a mineral estate, which is considered dominant. The mineral estate impliedly carries with it a right to use as much of the surface as may be reasonably necessary for operations relating to the mineral estate."). Despite Ms. Simmons' contention otherwise, the *Gerrity* Court said nothing about disbanding of the dominant and servient estate concept, and indeed only addressed the concept as a means to explain that an owner of a servient surface estate is entitled to use the entire surface as long his use doesn't preclude the mineral estate owner from accessing his estate. *Gerrity*, 946 P.2d at 927. As such, Ms. Simmons' argument that the *Goldblatt* merger doctrine is inapplicable to surface and mineral estates is unavailing.

Therefore, applying *Goldblatt* to the facts of this case, merger has occurred. Here, "a greater estate (mineral) and lesser estate (surface) met in one and the same person (Ms. Simmons), in one in the same right, without any intermediate estate." *See Goldblatt*, 95 Colo. at 423. However, *Goldblatt* also requires a reviewing court to assess the owner's intent in determining if merger has occurred. *Id.* (merger occurs "unless a contrary intent appears"). NGL argues that the intent requirement in *Goldblatt* no longer applies to mergers of land estates under Colorado law. To support this argument, NGL cites to *Salazar v. Terry*, 911 P.2d 1086, 1089–91 (Colo. 1996), where the Colorado Supreme Court found that an owner's intent was irrelevant to whether land estates merged. In *Salazar*, the Colorado Supreme Court affirmed the appellate court's finding that a boundary fence severing a parcel of land lost its legal significance

7

when a common owner acquired the land on both sides of the fence for a fifteen-day period. 911 P.2d at 1087. The court reasoned that "[o]nce the two tracts fell under common ownership, the fence no longer served any legal purpose, *i.e.*, there was no need for an internal boundary to separate land belonging to one owner," and therefore the tracts of land merged. *Id.* at 1092. Notably, the court also held that it is irrelevant whether or not the common owner intended for the parcels to merge. *Id.* at 1091–92. Instead, it held that severed parcels are *automatically* merged as a matter of law the moment that they are united under common ownership regardless of the owner's intent. *Id.* at 1091.

In making this decision, the *Salazar* court analogized to the law of easements. *Id.* at 1090–93. It noted that under the Colorado law of easements, "[w]hen the dominant and servient estates come under common ownership, the need for the easement is destroyed." *Id.* at 1091. Therefore, "the easement will not revive if the estates are separated once again 'without the same type of action required to bring an easement into existence in the first place.'" *Id.* (quoting 7 *Thompson on Real Property* § 60.08(b)(1) at 840); *see also Goldblatt*, 37 P.2d at 524. While acknowledging the differences that exist between easements and boundaries ("[t]here are no dominant and servient estates created by boundary fences"), the *Salazar* court nevertheless held that the two situations have identical results—automatic merger without regard to the owner's intent—when one owner unites previously severed parcels of land. *Salazar*, 911 P.2d at 1092.

The *Salazar* Court noted that this holding is a departure from the way intent is viewed in the context of mortgage merger. *Id.* In the mortgage context, a common owner's intent as to whether mortgaged land and mortgaged debt are merged *is* relevant. *See, e.g.*, *Hart v. Monte Vista Bldg. Ass'n*, 82 Colo. 204 (1927). This is because "circumstances can arise in which

8

[automatic] merger would produce unintended consequences." *Id.* at 1091–92 (citing 12 *Thompson on Real Prop.* § 101.03(e) at 383) (explaining that merger leads to unfair results if there are successive mortgages and a junior mortgage may be unjustly enriched when elevated to senior status when the first mortgage is merged and extinguished). Therefore, there is no automatic merger in the context of mortgages. *Id.* With this in mind, the *Salazar* court found that the merger of boundaries and easements is distinguishable from mortgage mergers because there is no analogous risk that "unintended consequences" may arise from automatic merger. *Salazar*, 911 P.2d at 1092. The court thus found that automatic merger occurs in the context of boundaries and easements without regard to the owner's intent. *Id.*

Drawing from the Colorado Supreme Court's treatment of merger in the boundary and easement contexts, I am persuaded that mineral and surface estates automatically merge under common ownership. Although *Goldblatt* held that an owner's intent is relevant to whether merger occurred, the Colorado Supreme Court jettisoned this intent requirement in situations where adjacent estates that were once severed come together under common ownership. And here, unlike the mortgage merger context where unintended legal consequences might arise if merger were to occur automatically and without regard to common owner's intent, there are no monsters hiding in the closet in a surface and mineral estate merger. The legal consequence of a merger in these cases is clear and predictable—instead of owning two estates on the same plot of land, the owner now owns one estate encompassing the minerals below and the surface above. Just as in the boundary and easement context, here "[o]nce the two tracts [fall] under common ownership, the [legal distinction] no longer serves any legal purpose, *i.e.*, there [is] no need for an internal boundary to separate land belonging to one owner." *Salazar*, 911 P.2d at 1092.

9

Therefore, I am persuaded that Colorado law supports the automatic merger of a mineral estate and surface estate when united under a common owner.

   **2. Other Jurisdictions' Decisions**.

Beyond instructive Colorado law, I find that the general weight of authority from other jurisdictions supports the automatic merger theory. As noted above, every other jurisdiction that has decided the issue of merger of surface and mineral estates has uniformly determined that the estates merge when they come under common ownership. The majority hold that merger occurs automatically, but one state appellate court holds that the owner's intent during the time in which he or she holds the estates in common can rebut the presumption of merger.

Jurisdictions finding that merger occurs automatically include West Virginia, Montana, Kentucky, Louisiana, and the United States Court of Claims. *See Henley v. United States*, 396 F.2d 956, 968 (U.S. Ct. Cl. 1968) ("severed mineral and surface estates will merge when reunited in the same owner."); *DWG Oil & Gas Acquisitions, LLC v. S. Country Farms, Inc.*, 796 S.E.2d 201, 203 (W.Va. 2017) (discussed below); *Hunter v. Rosebud City*, 783 P.2d 927, 929 (Mont. 1989) (once "both estates came together in the same owner, the remaining estate was merged into the mineral estate and there is no reason for further existence as separate estates."); *Bowles v. Hopkins Cnty. Coal, LLC*, 347 S.W.3d 59, 61 (Kent. App. 2011) (combined ownership of surface property and coal tracts resulted in merger); *Wall v. United Gas Pub. Serv. Co.*, 181 So. 562 (La. Ct. App. 1938) ("reservation of minerals in conveyance had become extinct by confusion through retransfer of property.").

The West Virginia Supreme Court decided this very issue earlier this year. In *DWG Oil & Gas Acquisitions, LLC*, the West Virginia Supreme Court determined that a surface estate and

mineral estate merged automatically when they fell under common ownership. *DWG Oil & Gas Acquisitions, LLC v. S. Country Farms, Inc.*, 796 S.E.2d 201, 203 (W. Va. 2017). There, a man conveyed his surface estate to a buyer but expressly reserved the mineral estate to himself. At that point, the surface estate and mineral estate were severed. However, years later in 1913, the buyer conveyed the surface estate back to the man. As such, the West Virginia Supreme Court determined that "the surface and mineral interests merged into a consolidated title" and the severance was extinguished. *Id.* at 207. In making this decision, the court cited *Summers Oil and Gas*, a national legal treatise on oil and gas, which notes that the general trend in this area of law is that "[w]hen the owner of a separate interest in the oil and gas under a tract of land acquires title to the surface of the land, that separate mineral interest is extinguished by the merger doctrine." *Id.* at 207 (quoting N. Saint-Paul, 1A Revised, *Summers Oil and Gas* § 8:8 (3rd ed. 2015). The court ignored the question of intent and held that merger occurred automatically. *Id.* at 203.

The Montana Supreme Court arrived at the same conclusion years earlier. *Hunter v. Rosebud City*, 783 P.2d at 929. The plaintiff in *Hunter* argued that mineral and surface estates could not merge after being severed because they became "estates of equal dignity." *Id.* at 929. The Montana Supreme Court rejected that argument, noting that under Montana law a mineral estate is dominant and the surface estate is subservient. Therefore, the court held that when the "mineral estate [was conveyed] to the owner or owners of the subservient remaining estate, and both estates came together in the same owner, the remaining estate was merged into the mineral estate and there is no reason for further existence as separate estates." *Id.* Like the West

11

Virginia Supreme Court, the Montana Supreme Court did not consider the owner's intent and held that merger occurred automatically.

Both the Supreme Court of West Virginia and Montana agreed that the mineral and surface estates merged automatically under the common owner because there is simply no legal benefit to keeping the estates separate when they are held by the same owner. This is the same rationale espoused by the Colorado Supreme Court in explaining why automatic merger occurs in the boundary and easement contexts. *See Salazar*, 911 P.2d at 1092 (eliminating the severance because it "no longer served any legal purpose, *i.e.*, there was no need for an internal boundary to separate land belonging to one owner."). The fact that the rationale used by other states in deciding the issue before this Court finds support in analogous Colorado law further convinces me that merger is automatic as a matter of Colorado law when a mineral and surface estate are united.

As noted, at least one jurisdiction holds that merger is a rebuttable presumption when surface and mineral estates are joined under common ownership. According to the Texas Court of Appeals, if a party can show that the common owner *intended* the estates to remain severed during her ownership, the court will not view the properties as having merged. *See Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 377–78 (Tex. App. 2003) (finding no merger based on evidence from the now-deceased owner's will and the testimony of her estate planner showing that the owner did not intend for the estates to merge while she owned them). I do not find the *Steger* approach persuasive. First, the Texas appellate court in *Steger* based its decision on well-established merger law in Texas. *See Steger*, 134 S.W.3d. at 376 (noting that under Texas law, "(5) merger must not be contrary to the intention of the owner of the two estates"). Unlike Texas

12

merger law, however, Colorado merger law holds that the owner's intent is irrelevant in estate mergers. *Salazar*, 911 P.2d at 1092. In addition, an automatic merger rule does not rob a landowner of her right to re-sever the estates when it comes time to sell. Instead, all the owner must do to ensure she retains the mineral estate is write the re-severance into the deed of sale. This is by no means an onerous requirement, but it gives buyers assurance that they are getting what they think they paid for—no hidden ghosts of property past, just the land contemplated by the parties at the time of sale.

Therefore, I determine that under Colorado law, a mineral estate and surface estate are automatically merged upon being united under common ownership. Any subsequent conveyance, unless indicated otherwise within the deed of sale, encompasses the entirety of the merged estate. Based upon this legal determination, the Property's surface and mineral estates automatically merged in 1974 when they were united in common ownership under the Simmonses.[2] ECF No. 21-1 at 6–7. Therefore, Ms. Simmons will survive NGL's motion for summary judgment only if the Court finds that the 1995 deed by which she conveyed the Property to the Austin Jr. Trust indicates that the parties intended for the estate to be re-severed.

B. **Viewed in the Light Most Favorable to Ms. Simmons, the 1995 Deed Indicated an Intent to Re-Sever the Surface and Mineral Estates.**

NGL seeks summary judgment on the theory that the deed by which Ms. Simmons conveyed the Property to the Austin Jr. Trust insufficiently communicated an intent to re-sever the mineral estate, and therefore Ms. Simmons conveyed both the mineral and surface estates to the Austin Jr. Trust who subsequently conveyed the merged estate to NGL. Because I find that

---

[2] The Property initially merged under the Adamses, but the Adamses expressly re-severed the estates in subsequent deeds. ECF Nos. 21-4, 21-1 at 6–7.

13

there is a genuine issue of material fact as to whether Ms. Simmons' sufficiently communicated her intent to re-sever the mineral estate in the 1995 deed, I deny NGL's motion for summary judgment.

The paramount purpose of construing any deed is to ascertain the parties' intent. *Percifield v. Rosa*, 220 P.2d 546 (Colo. 1950). Absent any ambiguity, the intent should be determined from the four corners of the instrument. *O'Brien v. Village Land Co.*, 794 P.2d 246 (Colo. 1990). Courts must take care to consider the entire deed, and not portions presented in isolated sentences and clauses. *Corlett v. Cox*, 333 P.2d 619 (1958). Reservations are construed more strictly than a grant, *see Radke v. Union Pac. R. Co.*, 138 Colo. 189, 334 P.2d 1077 (1959), and any ambiguities in a reservation are construed against the grantor. *Bell Petroleum Co. v. Cross V. Cattle Co.*, 492 P.2d 80 (Colo. App. 1971). With these principles in mind, I turn to the language of the 1995 deed.

The 1995 deed stated in relevant part:

"This deed, Made this 27th day of September 1995, between Charlotte F. Simmons . . . Grantor, and Leonard F. Austin, Jr., Revocable Trust Dated April 15, 1987 . . . Grantee.

The grantor for and in consideration of the sum of two hundred forty thousand dollars . . . has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell, convey and confirm, unto the grantee . . . all of the real property . . . in the said County of Huerfano and State of Colorado as follows:

> N ½ of the NE ¼ and the SE ¼ of the NE ¼ of Section 9; NW ¼ of the NW ¼ of Section 10, Township 30 South, Range 69 West of the 6th P.M., City of Huerfano, State of Colorado.

Together with . . . all the estate, right, title, interest, claim and demand whatsoever of the grantor . . .

> To have and to hold the said premises above bargained and described . . . **except 1995 taxes and all subsequent years, restrictions, reservations, covenants, easasements and rights-of-way of record, if any**."

ECF No. 21-1 (emphasis added).

The parties contest whether the exceptions clause (beginning with "<u>except</u>"), or any other portion of the deed sufficiently shows that the parties intended that the mineral estate would be reserved to Ms. Simmons. To be sure, the deed at no point contains the words "surface estate" or "mineral estate," and it fails to reference the prior severance of the land. It does, however, include the customized exceptions clause. This clause makes reference to the relevant tax year (1995), and it communicates Ms. Simmons' intent to convey the estate described except "reservations, covenants, easements and rights-of-way *of record*, if any." Therefore, the deed makes reference to evidence outside of the four corners of the deed. Because my primary purpose in interpreting a deed is to assess the parties' intent, *Percifield*, 122 Colo. at 167, and because the outward-referencing exceptions clause here creates an ambiguity as to the parties' intent, I will look at evidence beyond the deed to infer the parties' intent at the time of the conveyance. *O'Brien*, 794 P.2d at 246.

Ms. Simmons' estate flags several pieces of evidence that it argues clearly show that Ms. Simmons intended to convey only the surface estate to the Austin Jr. Trust. First, Ms. Simmons' estate provides evidence that she continuously paid taxes on the mineral estate of the Property from before the 1995 conveyance until as recently as the 2016 tax year. *See* ECF No. 26-4. Although Ms. Simmons' payment of taxes through 2016 doesn't definitively show that at the time of the conveyance the parties understood that Ms. Simmons was to retain the mineral estate, it at least raises a question as to what the parties agreed upon at the time of the conveyance.

15

The tax evidence also raises a question of what, if any, land reservations the County of Huerfano had "on record" at the time of the conveyance. The 2016 tax document provided to the Court shows that Huerfano County official records still have Ms. Simmons listed as the owner of "MIN RTS" at the geographic coordinates of the Property. Because the Property was at no point re-conveyed to Ms. Simmons after the 1995 conveyance to the Austin Jr. Trust, the 2016 Huerfano County tax records are necessarily based on the land records that were established prior to or at the time of the 1995 deed. Therefore, there is a chance that documents indicating Ms. Simmons' intent to reserve the mineral estate to herself existed "of record" at the time of the 1995 conveyance. If that is the case, the mineral estate belongs to Ms. Simmons under the exceptions clause of the deed. Interpreting the facts in the light most favorable to Ms. Simmons, I find that there is a genuine issue of fact as to whether the deed, by including reference to documents of record at the time of the conveyance in 1995, communicated Ms. Simmons' intent to re-sever the land.

Further, Ms. Simmons' estate provides evidence of two documents Ms. Simmons created in late 1993 in an effort to sell the Property that show she intended to sell the surface estate only. In a document submitted to the Pueblo Board of Realtors, Ms. Simmons marked that she was selling land located at the Property's geographic coordinates, but wrote that "Mineral Rights Availabl[e] Separat[e]." ECF No. 26-6. She further noted "Mineral Rights Neg W/ Sale" and that there is "Copper Mine & Gas Oil Potent[ial]." *Id.*

In the same document, Ms. Simmons wrote that the Huerfano County tax schedule number (a specific identification number assigned to each taxable property) attached to the Property she was seeking to sell was "3985 R001," but that the tax schedule number for the

mineral estate was "3425 M001." ECF No. 26-6. The 2016 tax documents referenced above show that Ms. Simmons continuously paid taxes under code "3425 M001"—the mineral estate number—and that NGL paid taxes under schedule number "39845 R001"—the number listed in the sale documents as distinct from the mineral estate number. Although no tax documents have been provided to the Court showing tax payments made by the Austin Jr. Trust, it seems likely that the Austin Jr. Trust paid taxes under the same tax schedule number that NGL pays under today—namely, a schedule number other than that assigned to the Property's mineral estate. Taken in the light most favorable to Ms. Simmons, it is at least reasonable to surmise that the Austin Jr. Trust understood that it would not acquire title to the mineral estate through when the 1995 deed was executed.

Additionally, Ms. Simmons' estate submitted evidence of an "Exclusive Right-To-Sell Listing Contract" that Ms. Simmons signed with her broker in which she described the land she sought to sell as "Land Only; Mineral Rts. Negotiable." ECF No. 26-5. While this document likely wouldn't have been "of record" and therefore would not on its own provide support for Ms. Simmons' claim that the 1995 conveyance included only the surface estate, it provides further evidence of the genuine fact dispute concerning the parties' intent at the time of the conveyance.

Finally, the sale documents show that the listing price for the Property—with mineral rights "available *separate*"—was $240,000. ECF Nos. 26-5, 26-6. That is the exact amount that the Austin Jr. Trust paid for the Property, as reflected in the 1995 deed between Ms. Simmons and the Austin Jr. Trust. ECF No. 2-1 at 8. Because the sale documents clearly indicate that Ms. Simmons did not intend for the sale to include mineral rights unless negotiated separately, and

because the Property ultimately sold for the amount that the surface estate alone was listed for, the sale price itself raises a reasonable inference that Ms. Simmons and the Austin Jr. Trust understood the 1995 sale to include the surface estate alone.

Considering all of this evidence in the light most favorable to Ms. Simmons, I find that there is a genuine issue of fact as to whether the parties to the 1995 deed intended the conveyance to include the mineral estate. In particular, I find that the deed's exceptions clause and relevant extrinsic evidence overcome NGL's argument that Ms. Simmons failed to communicate her intent to re-sever the land. Therefore, I deny NGL's motion for summary judgment.

**ORDER**

For the reasons above, the Court DENIES defendant NGL's motion for summary judgment, ECF No. 21.

DATED this 11th day of December, 2017.

BY THE COURT:

R. Brooke Jackson
United States District Judge